*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FIVE STAR OUTDOOR MEDIA, LLC,

        Appellant,

v

CHARTER TOWNSHIP OF HARRISON and
CHARTER TOWNSHIP OF HARRISON ZONING
BOARD OF APPEALS,

        Appellees.

UNPUBLISHED
October 20, 2025
3:04 PM

No. 370215
Macomb Circuit Court
LC No. 2023-000243-AA

Before: FEENEY, P.J., and BORRELLO and BAZZI, JJ.

PER CURIAM.

Appellant, Five Star Outdoor Media, LLC (Five Star), appeals as of right the trial court's order affirming the decision of appellee, Charter Township of Harrison Zoning Board of Appeals (the ZBA), denying Five Star's requests for variances from a local ordinance to construct a billboard on property located within appellee Charter Township of Harrison. Five Star further challenges the trial court's order denying reconsideration of the order affirming the ZBA. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Five Star owns a perpetual easement in real property located in an industrial district along I-94 in Harrison Township pursuant to an "advertising display structure perpetual easement agreement." The property is vacant, and long and narrow in size, and Five Star sought variances from the Harrison Township Code of Ordinances, § 72-6, the township sign ordinance, to erect a billboard on the property. In this area along I-94 in Harrison Township, there are already 17 billboards erected.

The township sign ordinance was amended in April 2021, and § 72-6(e) specifically regulates "[o]ff-site signs, including billboards," and provides, in relevant part:

-1-

(1) Off-site signs, including billboard signs, may be permitted as a special land use in the [industrial] zoning district as regulated herein and in the zoning ordinance.

(2) All billboards shall be confined to "adjacent areas", as defined in the Highway Advertising Act of 1972, along the I-94 freeway.

(3) No billboard shall be located within 3,000 feet of another billboard . . . .

\* \* \*

(5) No sign or part thereof shall be located within 100 feet of the freeway right-of-way line.

(6) The surface area of any billboard shall not exceed 300 square feet. Billboards with stacked or tandem faces shall be prohibited.

(7) The height of any billboard shall not exceed 25 feet above the grade of the ground on which the billboard is affixed.

\* \* \*

(11) No billboard shall have any movement in any of its parts and shall not contain changing illumination or changing message. [Harrison Township Code of Ordinances, § 72-6(e).]

Section 72-9 of the sign ordinance states, "Any party who had a sign denied by the building official or a sign permit denied by the building department may seek a variance of the provision(s) of this chapter by filing an appeal application to the township zoning board of appeals." Harrison Township Code of Ordinances, § 72-9. It further provides:

(1) At the hearing for an appeal, the zoning board of appeals may grant a variance from the provisions of this chapter upon a finding of all of the following:

a. The particular physical surroundings, lot shape or topographical conditions of the property would render compliance with the provisions of this chapter difficult and would likely result in a particular practical difficulty on the owner, as distinguished from inconvenience of meeting the chapter requirements or a desire to increase financial gain or avoid the financial expense of compliance.

b. Strict enforcement of the provisions of this chapter would serve no useful purpose.

c. The type of sign structure and the location proposed would not pose a significant risk to the public health, safety and welfare.

d. The benefit of the sign to the general public and/or applicant under the circumstances outweighs any risk to traffic safety and the township's desire to

eliminate the accumulation of visual clutter in accordance with the stated purpose of this chapter.

> e. A variance would be in the interest of the township and not against the spirit and intent of this chapter.

> (2) In issuing a variance from the strict letter of the provisions of this chapter, the building zoning board of appeals may grant a variance of any sign requirement or place reasonable conditions or restrictions upon issuance of a permit. [Harrison Township Code of Ordinances, § 72-9(1) and (2).]

Five Star requested variances from the sign ordinance, specifically § 72-6(e)(3), (5), (6), (7), and (11), to construct a billboard (a) at a setback of only 50 feet from I-94; (b) at a height of 60 feet above grade; (c) at a distance of only 1,622 feet from the next nearest billboard; (d) at a size of 1,340 square feet; (e) in tandem style; (f) and with electronic messaging. Five Star initially applied for a building and zoning permit from the township building official to construct the billboard, which was denied. The township board of trustees voted to have the ZBA hear Five Star's appeal of this denial, rather than the township building board of appeals (BBA), which previously heard such appeals before the sign ordinance was amended. Five Star's variances were denied by a unanimous vote of the ZBA on December 13, 2022.

In January 2023, Five Star appealed the ZBA decision in the trial court, asserting that the variances should not have been denied when evidence was presented to establish the requirements for a variance under the township sign ordinance, in addition to the township zoning ordinance, Harrison Township Code of Ordinances, Appendix A-Zoning Ordinance, art XVIII, § 18.04(I).[1]

---

[1] The zoning ordinance provides that an application for a variance shall not be approved "unless it has been found positively that:"

> 1. The strict enforcement of the zoning ordinance would cause practical difficulty and deprive the owner of rights enjoyed by all other property owners owning property within the same zoning district.

> 2. The conditions and circumstances are unique to the subject property and are not similarly applicable to other properties in the same zoning district.

> 3. The conditions and circumstances unique to the property were not created by the owner, applicant, or predecessor in title, within the time following the effective date of the provisions alleged to adversely affect such property.

> 4. The requested variance will not confer special privileges that are denied other properties similarly situated and in the same zoning district.

> 5. The requested variance will not be contrary to the spirit and intent of the township zoning ordinance.

> 6. The requested variance will not adversely affect the purpose or objectives of the Master Plan of the Township of Harrison. . . . [Harrison Township Code of Ordinances, Appendix A-Zoning Ordinance, art XVIII, § 18.04(I).]

After the filing of appellate briefs and oral argument, the trial court concluded that the record from the ZBA was insufficient to decide the appeal, and it remanded the matter to the ZBA for findings and conclusions on Five Star's variance requests.

The ZBA held a hearing on remand on September 12, 2023. No one appeared on behalf of Five Star. The ZBA considered each of Five Star's requested variances from Harrison Township Code of Ordinances, § 72-6(e)(3), (5), (6), (7), and (11), under the criteria provided in the appeal provision of the sign ordinance, Harrison Township Code of Ordinances, § 72-9(1)(a) through (e). The board voted unanimously each time to deny all of Five Star's variances.

In October 2023, Five Star moved to reinstate the appeal in the trial court, which was granted. The parties filed supplemental briefs, and Five Star argued that the ZBA decision did not meet the requirements of MCL 125.3606(1) of the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq*., and should be reversed. Appellees responded that, on remand, the ZBA followed proper procedure and provided sufficient findings and reasonings to deny each of Five Star's variances, and its decision should be upheld. The trial court agreed, and affirmed the ZBA decision. Five Star moved for reconsideration, which the trial court denied. This appeal ensued.

## II. STANDARDS OF REVIEW

Decisions made by a zoning board of appeals are appealable as of right in the trial court by the aggrieved party. MCL 125.3605; *Ansell v Delta Co Planning Comm*, 332 Mich App 451, 455; 957 NW2d 47 (2020). "[U]nlike in an original lawsuit, a circuit court sits as an appellate body with a closed record when reviewing an appeal brought under MCL 125.3605 and MCL 125.3606." *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 509 Mich 561, 597-598; 983 NW2d 798 (2022). The trial court "must ensure that the decision at issue comports with applicable law; follows from proper procedure; is supported by competent, material, and substantial evidence on the record; and constitutes a reasonable exercise of discretion." *Zelasko v Charter Twp of Bloomfield*, 347 Mich App 141, 156; 14 NW3d 441 (2023) (quotation marks and citations omitted); see also MCL 125.3606(1).

This Court reviews the trial court's decision on appeal de novo "because the interpretation of the pertinent law and its application to the facts at hand present questions of law." *Ansell*, 332 Mich App at 456 (quotation marks and citation omitted). This Court reviews the trial court's determinations regarding a zoning board of appeals' findings to assess whether the trial court "applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the zoning board of appeals' factual findings." *Pegasus Wind, LLC v Tuscola Co*, 513 Mich 35, 45; 15 NW3d 108 (2024) (quotation marks, citations, and brackets omitted). Whether the trial court misapprehended or grossly applied the substantial-evidence test is reviewed "under a standard identical with the 'clearly erroneous' standard." *Id*. (quotation marks and citation omitted). "A finding is clearly erroneous if the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). This Court also reviews de novo the construction and interpretation of statutes and local ordinances. *Connell v Lima Twp*, 336 Mich App 263, 281; 970 NW2d 354 (2021).

-4-

The trial court's decision to deny Five Star's motion for reconsideration is reviewed for an abuse of discretion. *Tripp v Baker*, 346 Mich App 257, 274; 12 NW3d 45 (2023). "A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes." *Id.* (quotation marks and citation omitted).

## III. THE ZONING ORDINANCE

Five Star argues that the ZBA erred in its analysis of denying its requests for variances by failing to consider the criteria provided in the township zoning ordinance, Harrison Township Code of Ordinances, Appendix A-Zoning Ordinance, art XVIII, § 18.04(I), and as such, the trial court violated MCL 125.3606 when it affirmed the ZBA decision. We disagree.

MCL 125.3606(1) provides that a party aggrieved by a decision of a zoning board of appeals may appeal that decision in the trial court for the county where the property is located, and the trial court must review the record and decision to make sure that the decision "meets all of the following requirements:"

> (a) Complies with the constitution and laws of the state.

> (b) Is based upon proper procedure.

> (c) Is supported by competent, material, and substantial evidence on the record.

> (d) Represents the reasonable exercise of discretion granted by law to the zoning board of appeals.

As a preliminary matter, it appears that Five Star has waived this first argument on appeal. "A waiver is an intentional relinquishment or abandonment of a known right. An affirmative expression of assent constitutes waiver." *Nexteer Auto Corp v Mando American Corp*, 314 Mich App 391, 395; 886 NW2d 906 (2016) (citation omitted). "A party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." *The Cadle Co v City of Kentwood*, 285 Mich App 240, 255; 776 NW2d 145 (2009). Under the appellate parachute theory, a party "may not assign as error on appeal something that [it] deemed proper in the lower court because allowing [it] to do so would permit [that party] to harbor error as an appellate parachute." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

Five Star contended in its trial-court claim of appeal and initial brief that the ZBA erred by failing to consider the criteria for a variance under the zoning ordinance. At the remand hearing, the township attorney advised the ZBA to apply the standards of review for a variance under the sign ordinance, § 72-9. No one appeared at the remand hearing on behalf of Five Star, and no one indicated to the ZBA that it needed to consider the zoning ordinance. In Five Star's supplemental brief filed after the appeal was reinstated in the trial court, Five Star again argued that the ZBA failed to analyze the proper criteria under "the township ordinances," and merely cited the zoning ordinance in the statement of facts section, but its argument and analysis specifically refers to the sign ordinance, not the zoning ordinance. Appellees asserted several times in the trial court,

including in their supplemental brief filed after remand, that the proper standard of review was under the sign ordinance, and that the ZBA followed proper procedure.

When the trial court heard oral argument on appeal after the ZBA remand hearing, and the court stated that it would take the matter under advisement, Five Star's counsel noted the fact that the ZBA did not analyze the zoning ordinance in reaching its decision. Appellees' counsel responded that only the sign ordinance was applicable. In disputing which letters from Five Star in the ZBA record on appeal were relevant, Five Star's counsel indicated that appellees' counsel was correct that "[i]f we are proceeding under the sign ordinance and the ZBA is analyzing the sign ordinance, that is fine," but he wanted to raise awareness to the other arguments made under the zoning ordinance. Five Star's counsel subsequently explained that he thought that appellees "were amending the sign ordinance such that it would become part of the zoning ordinance and that is why I submitted something under the zoning ordinance. Then it was the other way around." Five Star's counsel then conceded that it was the sign ordinance that was before the ZBA, but he asserted that the sign ordinance "could still be considered a zoning ordinance as well, but that is not really that pertinent here." In the trial court's opinion and order affirming the ZBA decision, it concluded that the ZBA "specifically addressed each criterion set forth in Section 72-9 of the Township Sign Ordinance."

Based on the apparent concessions by Five Star's counsel before the trial court that the township sign ordinance was the proper ordinance to administer, Five Star's argument that the ZBA erred by failing to consider the factors for a variance under the zoning ordinance is waived on appeal. *Nexteer*, 314 Mich App at 395.

Nonetheless, for further clarity, we conclude that application of the sign ordinance rather than the zoning ordinance was proper under general principles of statutory interpretation. Municipal ordinances are interpreted in the same manner as statutes, thus, the same principles of statutory interpretation apply. *Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 457; 965 NW2d 232 (2020). The ultimate goal in statutory interpretation is to ascertain and give effect to the intent of the Legislature. *Milne v Robinson*, 513 Mich 1, 12; 6 NW3d 40 (2024). In general, when two statutes conflict, the more specific provision governs over the more general one, and "the controlling question is how the Legislature intended for those statutes to interact." *Id*. The rationale behind this maxim is that if the more general provision was given effect over the specific one, the more specific provision would be rendered nugatory and ineffectual. *Id*. at 13. "[C]ourts generally presume that the Legislature gave more deliberate consideration to the specific issue when enacting the more specific statute and therefore treat this provision as an exception to the general act or provision that would otherwise govern to avoid rendering the more specific provision nugatory." *Id*. at 15 (quotation marks and citation omitted).

The township zoning ordinance is included as Appendix A to the code of ordinances. Harrison Township Code of Ordinances, Appendix A-Zoning Ordinance, art XVIII, § 18.04 articulates the procedure for requesting a variance from a zoning ordinance provision, and § 18.04(I) provides the criteria the ZBA must consider to approve such variances. However, Five Star was not seeking a variance from any provision of the zoning ordinance, rather, it was seeking several variances from a provision of the sign ordinance, specifically, Harrison Township Code of Ordinances, § 72-6(e). Five Star's application to the ZBA indicated it was seeking a "variance pursuant to sign ordinance section 72-9(1)(a)-(e)." The sign ordinance has its own chapter within

the township code of ordinances, stating that the intent of the chapter was "to create a comprehensive, balanced system of regulating signs . . . ." Harrison Township Code of Ordinances, § 72-1. Within Chapter 72, there is a specific provision regulating billboards, § 72-6(e), which was amended in 2021, significantly before Five Star submitted its variance application in November 2022. Additionally, the sign ordinance provides its own appeals procedure in § 72-9, for parties denied a sign permit that sought a variance.

While there was initial confusion as to whether the ZBA or the BBA was the proper forum to hear Five Star's variance request, when Five Star voiced its concern that the ZBA was the proper venue, appellees agreed, and the ZBA voted to approve that Five Star's appeal would be heard by the ZBA under the criteria provided in § 72-9(1). Section 72-9 was ultimately amended to clarify that all appeals under the sign ordinance would be heard by the ZBA. Because Five Star expressly sought variances from the sign ordinance, and the sign ordinance delineates the pertinent appeals procedure when a sign request or permit is denied, Harrison Township Code of Ordinances, § 72-9, it was proper for the ZBA to consider the more specific ordinance, the sign ordinance, rather than the more general ordinance, the zoning ordinance, in resolving Five Star's variance request. *Milne*, 513 Mich at 12-15.

Thus, the trial court did not err in affirming the decision of the ZBA because the ZBA's denial of Five Star's variances was based on proper procedure. MCL 125.3606(1)(b). As stated in appellee's brief filed in this Court, Five Star does not allege that the ZBA's decision was unconstitutional, or that the township ordinances were unconstitutional. See MCL 125.3606(1)(a). Further, in asserting that the ZBA decision was not supported by competent, material, and substantial evidence on the record and constitutes an abuse of discretion, MCL 125.3606(1)(c) and (d), Five Star argues the merits of each requirement for a variance under § 18.04(I) of the zoning ordinance. However, because Five Star waived this argument and the ZBA nonetheless applied the correct ordinance under the maxims of statutory interpretation, Five Star's contentions regarding each criterion in the zoning ordinance are rendered moot, and will not be discussed. See *Can IV Packard Square, LLC v Packard Square, LLC*, 328 Mich App 656, 661; 939 NW2d 454 (2019) (this Court generally does not decide moot issues); see also *Barrow v Detroit Election Comm*, 305 Mich App 649, 659; 854 NW2d 489 (2014) ("An issue is moot if an event has occurred that renders it impossible for the court to grant relief.") (Quotation marks and citation omitted.)

## IV. THE SIGN ORDINANCE

Five Star further argues that the trial court abused its discretion in denying Five Star's motion for reconsideration because the trial court made a palpable error by failing to address that the ZBA's findings on remand were biased, inferential, and conclusory, and contrary to the federal traffic study submitted by Five Star. We disagree.

On remand, the ZBA was to analyze each of Five Star's requests for a variance from the requirements in § 72-6(e) of the sign ordinance under the appeal procedure provided therein, § 72-9(1)(a) through (e):

> (1)　　At the hearing for an appeal, the zoning board of appeals may grant a variance from the provisions of this chapter *upon a finding of all of the following*:

a. The particular physical surroundings, lot shape or topographical conditions of the property would render compliance with the provisions of this chapter difficult and would likely result in a particular practical difficulty on the owner, as distinguished from inconvenience of meeting the chapter requirements or a desire to increase financial gain or avoid the financial expense of compliance.

b. Strict enforcement of the provisions of this chapter would serve no useful purpose.

c. The type of sign structure and the location proposed would not pose a significant risk to the public health, safety and welfare.

d. The benefit of the sign to the general public and/or applicant under the circumstances outweighs any risk to traffic safety and the township's desire to eliminate the accumulation of visual clutter in accordance with the stated purpose of this chapter.

e. A variance would be in the interest of the township and not against the spirit and intent of this chapter. [Harrison Township Code of Ordinances, § 72-9(1) (emphasis added).]

On appeal to the trial court, the court was required to ensure that the ZBA decision on remand "comports with applicable law; follows from proper procedure; is supported by competent, material, and substantial evidence on the record; and constitutes a reasonable exercise of discretion." *Zelasko*, 347 Mich App at 156 (quotation marks and citations omitted); see also MCL 125.3606(1). "Substantial evidence" is "evidence that a reasonable person would accept as sufficient to support a conclusion. While this requires more than a scintilla of evidence, it may be substantially less than a preponderance." *Pegasus Wind*, 513 Mich at 44-45 (quotation marks and citations omitted). "The factual findings of a zoning board of appeals are entitled to deference." *Id.* at 45. A court may not set aside these findings merely because alternative findings may have also been supported by substantial evidence on the record. *Id.*

After the remand to the ZBA, the trial court found that the ZBA decision to deny all the variances complied with the requirements in the sign ordinance, that the ZBA specified its factual findings for each criterion, and it affirmed the ZBA's decision. When Five Star moved for reconsideration of this decision, the trial court had to decide whether to grant the motion under MCR 2.119(F)(3):

Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

The trial court did not abuse its discretion by denying reconsideration, based on its conclusion that there were no palpable errors in its decision to affirm the ZBA's denial of Five Star's variances.

As noted above, principles of statutory interpretation also apply to municipal ordinances. *Grand Rapids*, 334 Mich App at 457. The provisions of an ordinance should be read reasonably and in context, with every word or phrase given its plain and ordinary meaning unless otherwise defined. *San Marino Iron, Inc v Haji*, 341 Mich App 634, 639; 991 NW2d 828 (2022). As an initial matter, § 72-9(1) of the sign ordinance states that the ZBA may grant a variance from the provisions of this sign ordinance "upon a finding of *all* of the following," before listing the requirements in subsections (a) through (e). (Emphasis added.) The use of the word "all" means that all five criteria must be met for the variance to be granted; conversely, if just one of the criteria is not satisfied, the variance may be denied. Thus, to the extent that Five Star argues on appeal that the ZBA erred by not considering one criterion for one of the requested variances, the ZBA was not required to under the plain language of the ordinance. If the ZBA determined that one of the criteria was not fulfilled, then it could properly deny the variance pursuant to § 72-9(1). See *Klida v Braman*, 278 Mich App 60, 66; 748 NW2d 244 (2008) ("[W]here common words used in their ordinary fashion lead to one reasonable interpretation, a statute cannot be found ambiguous.") (Quotation marks and citations omitted.)

Regarding § 72-9(1)(a), which requires that the ZBA consider whether the particular conditions of the property would render compliance difficult or result in practical difficulty to the owner, Five Star advances several arguments. Five Star contends that the ZBA should have considered Five Star's previous letters to the ZBA and BBA on remand in examining each requirement under § 72-9(1). This argument lacks merit because it is clear from the video of the ZBA hearing on remand that the board members each had a packet of information, presumably, the same packet Five Star provided at the first hearing containing the contested documents, and the board members frequently referred to Five Star's "letters" throughout the hearing.

Five Star asserts that the ZBA did not properly consider the long, narrow shape of the property, or how that creates a practical difficulty on Five Star, essentially limiting the use of the land to solely erecting a billboard. This is an inaccurate representation of the record. At the ZBA hearing on remand, when discussing Five Star's requested variance from § 72-6(e)(5), requiring that no billboard be placed within 100 feet of the I-94 right-of-way, ZBA member David Bratto noted that the parcel was only 50 feet wide. Member Shayne Gleason indicated that based on the shape of the lot, and the facts presented by Five Star, he would be willing to grant a variance since the shape of the lot did not allow for a 100-foot setback, and member Amanda Oparka agreed. Thus, the ZBA did consider this practical difficulty, but found other requirements of § 72-9 lacking, and therefore, properly denied the variance. The ZBA denied Five Star a variance from the 100-feet requirement in § 72-6(e)(5) because another billboard would increase the clutter to the area, and under § 72-9(1)(d), the benefit of the sign to the general public or applicant did not outweigh a concern for traffic safety and the desire to eliminate visual clutter. This conclusion did not violate the requirements of MCL 125.3606(1).

Five Star also argues that the ZBA's analysis regarding practical difficulty under § 72-9(1)(a) was improper because the ZBA erroneously believed Five Star leased the subject property. When considering the 100-foot limitation from the freeway right-of-way, Oparka stated that Five Star leased the property, rather than owning it. When considering Five Star's request for a variance from § 72-6(e)(3), prohibiting any billboard from being within 3,000 feet of another billboard, Oparka again stated that Five Star "leased" the property, and it could simply choose not to renew its lease. At that time, the township attorney interjected, and clarified that Five Star had an

easement to use the property. Regardless, the ZBA's understanding of Five Star's ownership interest in the subject property did not affect its scrutiny of the factors to grant a variance under § 72-9(1). When the ZBA's decision was particularly based on the desire to avoid visual clutter in the area, Oparka noted several times that if a billboard was removed in the area, Five Star could reapply. Thus, the nature of Five Star's ownership interest in the property did not influence the ZBA's examination of the variances, and there was no clear error in this regard.

Five Star additionally advances that the ZBA and the trial court erred by not considering the goal of the township master plan to promote economic viability in analyzing § 72-9(1)(b), (d), and (e). However, consideration of the master plan is included in the zoning ordinance provision to grant a variance, specifically, Harrison Township Code of Ordinances, Appendix A-Zoning Ordinance, art XVIII, § 18.04(I)(6). The same reference to the master plan does not exist in the sign ordinance; accordingly, there was no error by the ZBA in failing to consider it on remand.

Concerning § 72-9(1)(b), which obligates the ZBA to assess whether strict enforcement of the sign ordinance would serve no useful purpose, Five Star asserts that the ZBA overlooked whether strict enforcement would equate with the total inability to use the land, and that keeping a property vacant serves no useful purpose. This is also a mischaracterization of the record. When reviewing Five Star's requested variance from § 72-6(e)(3), to construct a billboard within 3,000 feet of another billboard, Oparka noted Five Star's argument that nothing else could be done with the property based on its shape and size. Oparka "did not disagree," but the ZBA ultimately denied this request to eliminate the accumulation of visual clutter. The ZBA expressed that there were already 17 billboards in that area, which were all installed before the sign ordinance was amended to add the 3,000-feet limitation. The decision of the ZBA to enforce its newly-enacted ordinance, with the intent of eliminating visual clutter, was not in violation of MCL 125.3606(1).

Addressing § 72-9(1)(c), which requires the ZBA to determine whether the billboard would pose a significant risk to the public health, safety, and welfare, Five Star contended that its billboard would not pose such a risk in an area where there are many other similar billboards, and that more tandem and illuminated billboards were being built along I-94, relying on a federal traffic-safety study. Five Star argues that the ZBA erred by concluding that the proposed billboard would pose a risk to public safety without referencing its own study or reading Five Star's cited study, and the trial court erred by adopting the ZBA's conclusory findings.

When the ZBA considered Five Star's request for a variance from § 72-6(e)(6), which requires that the surface area of a proposed billboard not exceed 300 square feet or be tandem-faced, the members did not believe that Five Star offered a factual basis, or any cases or studies to support this variance. Oparka, in reviewing one of Five Star's letters, recited Five Star's argument that a bigger sign was safer so drivers would not have to strain their eyes, but again stated that Five Star provided no studies to the ZBA indicating as such. Five Star repeatedly argues that the ZBA erred by failing to consider the federal traffic study that Five Star relied on in support of its proposition that larger, illuminated signs were not a traffic risk. A copy of this study is not included in the lower court file, in either the ZBA record on appeal provided to the trial court, or in the appendix to Five Star's brief filed with this Court. The subject study is cited in Five Star's letter

-10-

to the BBA, and in its appellate brief in this Court, only in a block quote of the BBA letter.[2] Once located online, it appears to be a 70-page article, for which Five Star provides no direct page citation. Five Star simply cited the article in its letter to the BBA as follows: "And the U.S. Department of Transportation's Federal Highway Administration has performed several comprehensive studies over the years which have conclusively shown that illuminated, digital billboards pose no danger to drivers." The study was not cited in the letter of intent sent to the ZBA.

In this context, we understand how the ZBA concluded that Five Star provided no studies to support its safety arguments. Clearly, the 70-page study was not included in the packet of information provided to the members at the initial hearing, which the board members seemingly had and reviewed at the hearing on remand. We find it difficult to believe that each member would have missed or ignored a 70-page article, and, even if it was provided, the ZBA was not required to read the entire article to search for support for Five Star's argument without being provided a page number. Although the board was provided with enough information to locate the article online, we are unable to conclude that the ZBA's decision did not comport with applicable law, follow proper procedure, was not supported by competent, material, or substantial evidence on the record, or constitutes an abuse of discretion. *Zelasko*, 347 Mich App at 156; MCL 125.3606(1). This is especially true when the traffic-safety study Five Star based so many arguments on was not directly provided to the ZBA, but merely cited, generally, without even a direct page citation. As such, the ZBA did not err by concluding that Five Star's request to erect a billboard bigger in square footage and in tandem style in variance of § 72-6(e)(6) did pose a significant risk to the public health, safety, or welfare under § 72-9(1)(c), when Five Star did not sufficiently support its safety argument on the record to the ZBA.

Five Star further asserted that the ZBA needed to have its own studies and data to support its factual findings, and that the ZBA tried to improperly shift the burden to Five Star. There is no indication from a plain reading of § 72-9(1) that the ZBA was responsible for providing its own studies on traffic safety in relation to an applicant's request for a variance from the sign ordinance. Rather, the ZBA was informed by the township attorney at the remand hearing that it could review all the documents included in the ZBA record on appeal, including Five Star's application, the original denial, and Five Star's letter to the BBA. It was the duty of the ZBA to make factual findings based on the record on each variance request. However, MCL 125.3606(1) does not obligate the ZBA to conduct additional research or undertake further investigation to substantiate its variance decision.

Similarly, under § 72-9(1)(d), which mandates the ZBA to weigh the benefit of the proposed sign against traffic safety and the desire to eliminate clutter, Five Star advances that the ZBA erred by merely concluding that there was too much clutter in the area, when Five Star argued that the benefits of the sign outweighed such an interest. This included Five Star's arguments that (1) the township master plan called for economic invigoration of the industrial corridor, (2) the

---

[2] See US Department of Transportation Federal Highway Administration, *Driver Visual Behavior in the Presence of Commercial Electronic Variable Message Signs (CEVMS)* (September 2012), available at <https://rosap.ntl.bts.gov/view/dot/49029> (accessed August 15, 2025).

federal study provided that billboards did not impact traffic safety, (3) construction of the sign would benefit Five Star when otherwise it would lose use of the property, (4) the larger sign was safer for drivers because it was easier to read, and (5) the new, digital billboard was more aesthetically pleasing and would not create clutter. The first four of Five Star's arguments have already been addressed, and analysis need not be repeated here.

When the ZBA examined Five Star's requested variance from § 72-6(e)(11), which prohibited any billboard from having changing illumination or messaging, Oparka stated that there were not very many billboards in that area with illuminated messaging, thus, the proposed billboard was distinct, and Five Star did not provide support for its assertion that it would be an "invigorating addition" to the "billboard corridor." Section 72-6(e)(11) specifically states, "No billboard shall have any movement in any of its parts and shall not contain changing illumination or changing message." The intent of the sign ordinance is clear from its plain language, and as such, the ZBA did not violate MCL 125.3606(1) by denying Five Star's request to erect an illuminated billboard.

Lastly, § 72-9(1)(e) requires the ZBA to analyze whether the variance would be in the interest of the township and not against the intent of the sign ordinance. Five Star relied on the goal of the master plan, the lack of safety concerns, an alleged tax benefit for the township, the addition of the new and unique billboard, and the fact that keeping the land vacant would have no benefit to the township. Conversely, the ZBA did not cite any other facet of the spirit or intent of the sign ordinance other than to reduce visual clutter. Several of these arguments by Five Star have already been addressed, and lack merit. The ZBA denied three of Five Star's requested variances based on the township's desire to eliminate visual clutter: (1) a variance from the 100-foot-distance requirement from the freeway right-of-way; (2) a variance from the height limit of 25 feet above grade; and (3) a variance from the 3,000-feet-between-billboards limitation.

The intent of the sign ordinance is provided in the first provision of Chapter 72:

> The intent of this chapter is to create a comprehensive, balanced system of regulating signs and, thereby, to facilitate an easy and pleasant communication between people and their environment, to enhance the physical appearance of the township, to make the township a more enjoyable and pleasing community, and to create a more attractive economic and business climate. It is intended by the provisions of this chapter to reduce signage and advertising distractions, to eliminate hazards caused by signs being too close to the public rights-of-way, to avoid the confusion of conflicting adjacent signs, to protect property values, and to eliminate obsolete, irrelevant, nonconforming and deteriorated signs. With these purposes in mind, it is the intention of this chapter to authorize the use of signs which are:

> (1) Compatible with their surroundings.

> (2) Appropriate to the type of activity to which they pertain.

> (3) Expressive of the identity of individual proprietors or of the development as a whole.

(4) Legible in the circumstances in which they are seen.

(5) That all signs within the township are consistent in size and aesthetic character. [Harrison Township Code of Ordinances, § 72-1.]

Thus, a billboard that would add to the visual clutter of the area would be against the spirit and intent of the sign ordinance, and the ZBA did not clearly err by concluding so, and denying Five Star's variances on this basis.

Because the ZBA's denial of Five Star's requested variances did not violate MCL 125.3606, the trial court did not err by affirming the denials on appeal. On reconsideration, it does not appear that Five Star "demonstrate[d] a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error." MCR 2.119(F)(3). Therefore, there was no abuse of discretion by the trial court when it denied Five Star reconsideration of its previous order affirming the ZBA.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Mariam S. Bazzi